## B. A. RAILTON

### *v.*

## THE CHICAGO TITLE AND TRUST COMPANY.

### *Opinion filed December 22, 1906.*

1. FRAUD—*when vendee in bill of sale is liable for amount received on re-sale.* A vendee in a bill of sale made to defraud the vendor's creditors and accepted by the vendee with knowledge of that fact, who subsequently sells the property to a *bona fide* purchaser and retains the proceeds of sale, is liable for the amount so received when sued by the trustee appointed in the vendor's bankruptcy proceeding.

2. APPEALS AND ERRORS—*what questions are concluded by Appellate Court's judgment.* Whether a vendee in a bill of sale had knowledge that the vendor was bankrupt, and whether he took possession of the property under the bill of sale and abandoned his rights under an unrecorded mortgage which he held, are questions of fact on which the judgment of the Appellate Court is conclusive.

3. SAME—*when giving misleading instruction will not reverse.* Giving an instruction that an unrecorded chattel mortgage was of no effect as against the mortgagor's trustee in bankruptcy is not ground for reversal, even though the mortgagee took possession before the bankruptcy proceeding was begun, where the Appellate Court found, as a question of fact, that such possession was not taken under the mortgage but under a bill of sale, and that the mortgage was abandoned.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

WALKER & WILLIAMS, for appellant.

WHEELER, SILBER & ISAACS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The appellant is, and has been for a number of years, a wholesale grocery merchant in the city of Chicago. Edward M. Saunders had been in his employ for a number of years prior to 1897. About that year Saunders started in the grocery business for himself, and from time to time purchased goods of appellant on credit. After Saunders had been engaged in business for himself a year he gave the appellant a chattel mortgage on his goods and fixtures to secure the account. The mortgage was renewed every year until January 7, 1902, when the last mortgage was given to secure, as it recited, $750. Each of the mortgages appears to have been given to secure a larger sum than the amount due the appellant. He claims this was for the purpose of securing him in extending Saunders further credit. The amount due appellant January 23, 1902, as shown by his statement of the account, was $389.96. On Sunday, April 13, 1902, Saunders called on appellant at his house and told him he feared Walsh, Boyle & Co., who were also his creditors, intended taking steps to close him up; that a salesman of that firm and a Mr. Brennan had been in his store that day; that Brennan was trying to buy it and offered him $1100 for it. He told appellant that he refused to sell at that price, and that the salesman of Walsh, Boyle & Co. said he would compel him "to do business," and this led him to fear proceedings to close him up. A bill of sale was then prepared which purported to convey, from Saunders to ap-

pellant, the stock of groceries, fixtures, two horses, two wagons and two sets of harness. It was acknowledged and recorded April 14, 1902, and the consideration expressed therein was $489.96. Appellant testifies Saunders owed him at the time $389.96, and that a lump sum of $100 was added for interest. Appellant took possession of the stock of goods and other property described in the bill of sale early Monday morning, April 14, and shortly thereafter Walsh, Boyle & Co. levied an attachment on the property for a claim of $188. When the attachment was levied appellant sent for Brennan and sold him the property for $1050. Out of the proceeds the $188 claim of Walsh, Boyle & Co. was paid and Railton retained the balance, as he claims, under an agreement with Saunders that he should, after paying himself $489.96, pay the residue to Saunders. The latter testified he did not know of the sale before it was made, did not approve of it and that appellant agreed to hold the money till he sanctioned it. Appellant claims it was agreed when the bill of sale was made that he was to hold the property until he could sell it advantageously and then he should do so, and after deducting his claim pay Saunders the balance. Within a day or so after the sale, and while Railton still held the proceeds of it, he received communications from a number of Saunders' creditors having claims against him, aggregating a much larger amount, he says, than Saunders had told him of before he took the property. Appellant did not thereafter pay Saunders the amount he held in excess of his own claim, and on April 23, 1902, Saunders filed a voluntary petition in bankruptcy, scheduling liabilities to the amount of nearly $5000. The appellee was appointed trustee of the bankrupt estate and brought this suit to recover the value of the property received by appellant from Saunders. The theory upon which the suit was based, in part, was, that the sale from Saunders to the appellant was fraudulent and made for the purpose of delaying and hindering creditors, and that the fraudulent purpose was known

to and participated in by appellant; that Saunders at the time was insolvent, and appellant knew this fact or had reasonable grounds for believing it; that the effect of the transfer was to prefer appellant to other creditors, and that under the National Bankruptcy act such conveyance was void as against the creditors of the bankrupt. A trial by jury in the superior court resulted in a verdict and judgment for appellee for $1050. On appeal to the Appellate Court for the First District that judgment was affirmed, and appellant brings the case here by appeal from that court.

It is earnestly contended by appellant that the transactions between him and Saunders were in good faith, and not for the purpose of hindering, delaying or defrauding creditors or giving appellant any advantage or preference over others. That Saunders was, in fact, insolvent is not denied. Whether appellant knew this fact or had reasonable grounds to believe he was insolvent, and whether the bill of sale was made by Saunders to hinder and delay his creditors or to give appellant a preference over them, were controverted questions of fact. These issues of fact were determined against appellant in the trial court and that judgment has been affirmed by the Appellate Court, and where there is evidence tending to support it, its judgment is binding on us.

Complaint is made of certain instructions given for appellee. One of the instructions complained of told the jury that the chattel mortgage given by Saunders to appellant not having been recorded, was of no effect as against appellee, the trustee of the bankrupt estate of Saunders. It is argued that appellee did not, by taking the bill of sale, abandon his mortgage, and that inasmuch as he took possession of the property before the filing of the petition in bankruptcy and the appointment of appellee as trustee, the mortgage, though unrecorded, was valid, at least as to the fixtures, horses, wagons and harness. The instruction should not have been given in the form it was, but we are of opinion giving it was not such prejudicial error as requires a

reversal of this judgment. Whether appellant abandoned his mortgage and took his title to the property under the bill of sale was also a disputed question of fact on the trial. The chattel mortgage was executed January 7, 1902, which was within four months prior to Saunders filing his petition to be adjudged a bankrupt. It recited that it was given to secure four notes of even date, three for $200 each and one for $150, maturing in three, six, nine and twelve months, respectively. Saunders' actual indebtedness to appellant at the time was but little more than half the sum the notes amounted to. There was evidence tending to show that appellant did not rely on this mortgage, and did not take possession of the property as mortgagee but as a purchaser under the bill of sale. He testifies he took the bill of sale in order to avoid foreclosing the mortgage. What the fact was upon this disputed proposition is not open for our consideration. The Appellate Court said in its opinion: "The mortgage was abandoned by the act of the parties. Railton did not take possession of the property on April 14, 19——, and sell the same as mortgagee under the mortgage, but under what purported to be an absolute sale and transfer of the property to him, and he re-sold the property to Brennan on April 14 without the knowledge or consent of the bankrupt, although the bankrupt appears subsequently to have ratified or assented to such sale." That there was evidence tending to support the conclusion of the Appellate Court cannot be denied. Under this state of facts the giving of the instruction referred to would not justify a reversal of the judgment.

It is also contended that certain other instructions given for appellee were erroneous, and that the court erred in refusing certain instructions asked by appellant and in the admission of evidence. We have examined these assignments of error and cannot see that there was any prejudicial error in the rulings of the court in the respects complained of, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*